**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FILED

?C? AUG -7  PM 4: 09

**CASE NO.:**
6:09-cv-1394-Orl-PDAB

US DISTRICT COURT
... F FL

CAROLYN McCREARY, as Personal
Representative of the Estate of LORENZA
McCREARY,

     Plaintiff,

v.

BREVARD COUNTY, FLORIDA, a political
subdivision of the State of Florida; BREVARD
COUNTY SHERIFF JACK PARKER, in his
official capacity; OFFICER JAMES MOFFITT,
OFFICER LARRY CUMMINGS, CORPORAL
DAILS NED MILS, SERGEANT ANSELL,
OFFICER MARK MORRIS, SERGEANT
DAVIS, LIEUTENANT DODSON, MAJOR
HIBBS, CORPORAL GETZ, CORPORAL
KELLERUP, GEORGE REED, MAJOR LISA
PATRICK, and JOHN/JANE DOES 1-50,

     Defendants.

_____/

## COMPLAINT

COMES NOW, Plaintiff CAROLYN McCREARY as Personal Representative of the

Estate of LORENZA McCREARY, ("CAROLYN"), and hereby sues jointly and severally

Defendants BREVARD COUNTY, FLORIDA ("COUNTY"), BREVARD COUNTY

SHERIFF JACK PARKER ("PARKER"), OFFICER JAMES MOFFITT, OFFICER LARRY

CUMMINGS, CORPORAL DAILS NED MILLS, SERGEANT ANSELL, OFFICER MARK

MORRIS, SERGEANT DAVIS, LIEUTENANT DODSON, MAJOR HIBBS, CORPORAL

GETZ, CORPORAL KELLERUP, GEORGE REED, MAJOR LISA PATRICK, and

JOHN/JANE DOES 1-50 (hereinafter sometimes collectively referred to as "CORRECTION

OFFICIALS") and in support thereof states:

## JURISDICTION

1.      This is an action for damages arising out of one or more violations of State and Federal law as detailed below.

2.      The jurisdiction of this Court is predicated on 28 U.S.C. §§1331, 1343, and 42 U.S.C. §§1983, 1988, the Fifth, Eighth and Fourteen Amendments to the United States Constitution and the laws of the State of Florida.

3.      The acts and practices constituting the violations alleged below have occurred within the jurisdiction of the United States District Court in and for the Middle District of Florida.

4.      In connection with the acts, practices and violations alleged herein, each Defendant, directly or indirectly, violated the constitutional rights of the Plaintiff, CAROLYN McCREARY as Personal Representative of the Estate of LORENZA McCREARY.

5.      All conditions precedent to the maintenance of this action have been satisfied.

6.      The Plaintiff seeks an award of damages of seventeen million dollars ($17,000,000.00) exclusive of attorneys' fees and costs.

## PARTIES

7.      At all times material hereto, CAROLYN McCREARY ("CAROLYN") is the mother of the decedent LORENZA McCREARY ("LORENZA") and has been appointed the Personal Representative of the Estate of LORENZA McCREARY by the Circuit Court of Brevard County, Florida, as is shown in Letters of Administration, a copy of which is attached hereto as Exhibit "A", for and on behalf of the survivors of the Estate of LORENZA McCREARY, all of whom at all times material hereto, resided in Blacksville, South Carolina.

8.      Defendant, COUNTY is the legislative and governing body of Brevard County, Florida.  At all times material hereto, COUNTY had the powers and duties to, among other

things, carry on county government, conduct investigations of county affairs and perform acts which are in the common interest of the people of Brevard County.

9.    Pursuant to Florida law, Defendant COUNTY was charged with the duty of funding, overseeing and maintaining all correctional activities in Brevard Countyand had ultimate authority over correctional activities.

10.    Defendant PARKER is responsible for the conduct of the corrections officers employed at the Brevard Sheriffs' Office and the Brevard County Detention Center ("JAIL") ensuring that the Department's corrections officers, employees, servants and agents obey the laws of the State of Florida and the United States.

11.    The following CORRECTIONS OFFICIALS were employed by PARKER and were involved with handling, protecting, attending to and/or controlling the interaction of LORENZA with other inmates and particularly DONTE EVANS and were employed at all times relevant hereto at the JAIL located at 860 Camp Road, Cocoa, Florida 32927:

        a.    OFFICER JAMES MOFFIT

        b.    OFFICER LARRY CUMMINGS

        c.    CORPORAL DAILS NED MILLS

        d.    SERGEANT ANSELL

        e.    OFFICER MARK MORRIS

        f.    SERGEANT DAVIS

        g.    LIEUTENANT DODSON

        h.    CORPORAL GETZ

        i.    MAJOR HIBBS

        j.    CORPORAL GETZ

        k.    CORPORAL KELLERUP

Jacobs / Offir, P.L.      3
1911 Harrison Street, Hollywood, Florida 33020 (954) 929-0679 Telephone (954) 929-0926 Facsimile
www.jacobsoffir.com

l.   GEORGE REED

m.   MAJOR LISA PATRICK

n.   JOHN/JANE DOES 1-50 (unknown parties who work for PARKER and whose identities are as of yet undetermined)

12.   All of those identified in paragraph 11, above, shall hereinafter collectively be referred to as "CORRECTIONS OFFICIALS."

13.   At all times material hereto, and in all their acts described herein, the Defendants were acting under color of state law and color of their authority as public officials and public employees of the State of Florida.

14.   Defendants violated Plaintiff's constitutional rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

15.   The constitutional violations suffered by Plaintiff were committed as a result of the intentional conduct or deliberate indifference and policies and customs of Defendants.

## FACTS

16.   The JAIL opened in 1976.  By 1983, the JAIL was already the subject of a federal lawsuit related to the conditions at the JAIL.

17.   Shortly after opening, conditions at the JAILwere so deplorable and overcrowded that a federal lawsuit was filed.

18.   LORENZA McCREARY was born on April 11, 1986 in Barnwell, South Carolina.

19.   Dating back to prior to LORENZA's birth, COUNTY already knew that overcrowding at the JAIL was at "crisis levels". (Orlando Sentinel.  "Bursting at the Seams", June 19, 2006).

20.     In 1988, a consent decree was entered into which was not followed and subsequently had to be addressed again in 1993 and then yet again in 2004. In addition, JAIL reports were issued in 1989, 1995, 2003 and 2004.

21.     Between December, 2003 and March, 2004 five inmates died of apparent suicides and the Miami-based Florida Justice Institute filed yet another lawsuit against the County in federal court.

22.     Rather than address the conditions in the JAIL, the Sheriff instituted a policy of putting inmates in disciplinary/administrative holding together so that they would hopefully prevent the other from committing suicide.

23.     As the overall JAIL population increased and overcrowding conditions worsened, so too did violence and tension levels in the JAIL. Indeed, as was widely reported to both Brevard County and the public at large, inmate assaults on other inmates went from 244 in 2002, to 368 in 2006, and then to over 400 in 2007.

24.     The situation continued to deteriorate and finally in December, 2007, the attorney for COUNTY, apparently worried that they might have to spend money (the prior expansion cost seventeen million dollars ($17,000,000) expanding the overcrowded JAIL),sought to appease critics through the retention of a consultant to assess the situation and recommend a further course of action. In January, 2008, Judge Richard Edelstein, a judge and expert on prison overcrowding was retained to evaluate **yet again** the cause for persistent overcrowding and poor conditions at the JAIL.

25.     At all times relevant hereto, SHERIFF and COUNTY's main concern was not the safety and humane treatment of its inmate population, but money. COUNTY had expended seventeen million dollars ($17,000,000) on its last prison expansion and it was willing to

tolerate the increase risks to inmates rather than expend the monies to adequately expand and staff the JAIL.

26.    In May, 2008 the average daily jail population at the JAIL hit a high of 1,914, almost double the capacity of the JAIL. So poor were the conditions that inmates were sleeping in common areas not designed as sleeping quarters.

27.    In July, 2008, Judge Edelstein's findings were published and delivered to the Sheriff and the County.

28.    In Judge Edelstein's report (hereinafter the "Report") he was apparently able to clearly visualize and/or anticipate the constitutional violations taking place at the jail of which PARKER and COUNTY were deliberately indifferent. Edelstein lamented:

> An overcrowded jail is a dangerous place for correctional officers, support staff and the inmates. The heart of a safe jail is its classification system and the beds to support it. Mixing inmates who should not be housed together because of functional overcrowding is a recipe for disaster. Classification systems are designed to limit conflict, enhance control and provide greater safety for inmates and staff.

29.    On or about August 29, 2008, when his cousin was arrested and booked, LORENZA, at the age of twenty-two, was likewise arrested and booked into the Brevard County JAIL.

31.    LORENZA was mentally impaired and upon information and belief, was receiving Supplemental Social Security Income as a disabled person.

32.    LORENZA was the only son of CAROLYN and had lived with his mother, not knowing his father, and enjoyed a close relationship with her for most of his life.

33.    LORENZA had never been arrested for violence of any kind and indeed he was small framed at approximately 5'7" and 157 pounds.

34.     On August 25, 2008, PARKER, in response to the findings of a review panel on prison Rape, acknowledged that "approximately eighteen hundred (1,800) inmates were occupying rated jail space approved for approximately one thousand (1,000) inmates".

35.     Even prior to the incident complained of in this Complaint, PARKER himself admitted that he perceived the conditions at Brevard County Jail to constitute a "dangerous overcrowding situation at the jail". Still, he employed few if any changes and elected not to maintain an adequate inmate classification system.

36.     Upon review of an inmate Self Report Survey, rather than taking the expressions of inmates seriously, PARKER elected to act first to protect himself and in the process exhibited a reckless indifference to the conditions facing inmates, electing to complain about an inmate survey itself rather than addressing the conditions which belied them. Indeed, PARKER downplayed the conditions at the JAIL and particularly the risk of sexual assault in the JAIL.

37.     In addition to the deplorable conditions, PARKER failed to take seriously complaints by inmates of deliberate abuse by staff including placing inmates in cells with other inmates who they know will injure them or failing to address inmate concerns for safety in being placed with other violent inmates.

38.     Four (4) days later, on August 29, 2008, LORENZA was assigned to an ordinary cell in the JAIL.

39.     On or about September 4, 2008, LORENZA was accused of attacking another inmate after returning from bible study; however, he denied it, no correction officer witnessed the alleged harassment, and indeed at least one other inmate, Sean Pope, asserted that LORENZA had not been the instigator of whatever had arisen between the two. LORENZA was transferred to the administrative containment wing (300 Pod).

40.     On or about September 25, 2008, LORENZA was transported from cell 323 to 321 for no apparent reason other than that PARKER and his employees/agents concluded that LORENZA "needed" a roommate. The roommate that LORENZA was assigned was DONTE EVANS ("DONTE").

41.     DONTE had been in the JAIL, most recently, since he was arrested on May 17, 2007,for armed robbery.

42.     DONTE was 5'10" tall and nearly double the weight of LORENZA.

43.     Additionally, upon information and belief DONTE was wanted in other jurisdictions for violent crimes and had a history of violent and physically abusive behavior including at the Brevard County Jail.

44.     Indeed, while in the JAIL, on December 9, 2007, just nine (9) months before being placed in the disciplinary cell with LORENZA, DONTE was arrested while in JAIL and charged with aggravated battery and false imprisonment upon another inmate. In that case, DONTE took an item ordinarily afforded inmates, to wit, a razor blade, and slashed the head of his roommate.

45.     Beyond the above, DONTE had most recently been placed in disciplinary confinement specifically because he had **again** been violent with other inmates and had made threats of physical violence against correctional officers.

46.     The cell in which DONTE and LORENZA were placed is rectangular in shape and seven feet three inches by thirteen feet seven inches at its widest point. The interior of the cell narrows at the door of the cell to the dimensions of five feet four inches by thirteen feet seven inches

47.     Having concluded that LORENZA was violent with another prisoner and with the knowledge that DONTE had attempted to kidnap and had slashed another inmate with a

razor and had recently attacked other inmates and threatened PARKER's staff, PARKER, and some or all of CORRECTIONAL OFFICIALS and/or otherwise through PARKER's employees and agents made the decision to put the two in a smaller cell together.

48.    In addition to placing DONTE, a known violent attacker of inmates in a 7x13 cell with LORENZA, a young, troubled man, half his weight, DONTE was permitted to own and maintain a sharpened pencil, which would later, just as DONTE had earlier used a razor against another inmate, be an instrument of extreme violence used against LORENZA.

49.    The actions of PARKER and CORRECTIONAL OFFICIALS were with utter disregard to the safety and rights of LORENZA by placing DONTE in the same cell as LORENZA knowing or as they should have known of DONTE's violent history, his earlier violence against other inmates, and the size differential between LORENZA and DONTE.

50.    There was no analysis performed by any correctional officers assessing whether DONTE posed a threat to LORENZA or whether the two might pose a threat to each other or whether placing the two of them together constituted an ultra hazardous condition.

51.    Furthermore, LORENZA and DONTE may have been placed together deliberately to punish one or the other or both in direct violation of the constitutional rights of LORENZA.  In 2008, other inmates complained that CORRECTION OFFICERS deliberately at times placed inmates who posed high risks of inmate on inmate violence together as punishment and in some cases ignored pleas of inmates who faced victimization by other inmates, instead placing them in close quarters as well.

52.    Approximately twelve (12) days after LORENZA and DONTE were placed in Cell 321, on or about October 6, 2008 at or about between 2 a.m. and 3 a.m., DONTE attacked LORENZA.

53. On October 6, 2008, the total inmate population was, at its peak, 1781, approximately 78.1% over capacity yet staffing at the JAIL was not at an adequate level to monitor and handle an inmate population count of 1781.

54. LORENZA was found by a correctional officer lying on the ground, non-responsive, with his pants around his ankles.

55. LORENZA had bruising and swelling around both eyes and had been beaten about the face and head prior to being repeatedly punctured with a pencil including punctures to both orbital sockets.

56. LORENZA had been sexually assaulted, beaten, and strangled, and was non-responsive when guards noticed that he was lying on the floor of his cell as DONTE read a book in his bunk.

57. LORENZA was transferred to Wuesthoff hospital where he was on life support in critical condition. Medical providers removed a large piece of wooden pencil from LORENZA's right eye. The pencil part was approximately 6.35 cm in length and 8 cm in width.

58. LORENZA died the following day after his organs were harvested for donation at the request of his family.

59. On November 18, 2008, DONTE was charged with first degree premeditated murder.

60. Apparently DONTE had not only been planning to commit murder for more than twenty-four hours, he had sufficient unsupervised time to write the front and back of over a dozen pages, listing the various demands that he would later make in exchange for his own cooperation in the investigation of the murder he was about to commit.

61. At all times material hereto, BREVARD COUNTY, PARKER and CORRECTION OFFICIALS knew that staffing levels were below where they should have been and the capacity at the jail was exceeded yet all were utterly indifferent to the safety of the pretrial detainess and other inmates housed with proven and known violent offenders without a proper classification system.

62. Subsequent to the assault on LORENZA, DONTE tendered his demands which after having spent twenty-four (24) hours drafting them, he stored for safe-keeping in his rectal cavity. Among his demands, DONTE requested:

> I need an unlimited supply of Energizer batteries...I need an unlimited supply of packs of Cool Mild 100's...I will enjoy the said things...for 31 days before saying anything. Then on the 32 second day I will explain...revealing all the rival individuals involved in the beef with me and my boys, including the beef on sight with rivals that will continue in the Brevard County Jail.

63. In January, 2009, DONTE confessed to the murder of LORENZA and will spend the rest of his life in prison.

## COUNT I
## VIOLATION OF CONSTITUTIONAL RIGHTS
### (against All Defendants)

64. Plaintiff restates, realleges and reavers paragraphs one through sixty-three above as if fully restated herein.

65. Acting under color of state law, Defendants were deliberately indifferent and grossly negligent of their responsibility to LORENZA McCREARY while he was in their care, control and custody as a pretrial detainee of the Brevard County JAIL. This deliberate indifference and gross negligence resulted in violations of the civil rights of LORENZA McCREARY guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, in which LORENZA was deprived of his liberty without due process and

the privileges and immunities guaranteed him rendering Defendants liable to Plaintiff under 42 U.S.C. §1983 and §1985.

66.    Defendants' conduct was deliberately indifferent and grossly negligent in at least the following ways:

a.    By failing to properly classify LORENZA, a non-violent pretrial detainee in a category that would avoid the risk of him being administratively confined with DONTE, a violent felon;

b.    By placing LORENZA, a pre-trial detainee, and DONTE in a cell together;

c.    By placing LORENZA, a pre-trial detainee and DONTE in an isolation cell together and providing DONTE, an inmate who had been known in the past to pose a risk to other inmates, with an instrument that can be used to commit extreme violence, to wit, a pencil;

d.    By repeatedly failing to adequately address the persistent overcrowding and understaffing conditions at the JAIL and specifically the earlier entered consent decree;

e.    By ignoring the recommendations of Judge Edelstein and further in some cases, actually taking actions directly contradictory to those recommended of Judge Edelstein;

f.    Upon information and belief, by placing EVANS, a known violent offender and McCREARY, a pre-trial detainee in the cell together with the deliberate intention of punishing one or the other;

g.    By creating conditions which Defendants knew were substantially likely to create ultra hazardous conditions and an unacceptably high risk of violence by EVANS upon LORENZA.

h.    As to COUNTY and SHERIFF, by failing to supervise the actions or inactions of the CORRECTIONS OFFICIALS at the JAIL and failingto provide and maintain adequate security at the institution, such that LORENZA suffered acts and threats of physical violence perpetrated by DONTE from whom LORENZA was not reasonably protected.

67.    The Defendants, knowing that the overcrowding of cells, placing of pretrial detainees with convicted felons, and placing violent inmates who have a history of violence against other inmates into a small cell with an inmate one half his weight, posed a clear and present danger to LORENZA's safety and having the power to correct these conditions but not exercising it,willfully, deliberately, maliciously and/or with gross negligence and reckless disregard, permitted the assault on LORENZA to occur.  In doing the acts and omissions complained of, including but not limited to permitting the assault on LORENZA, the Defendants designed to deny and deprive LORENZA of his liberty interest protected under the Fifth, Eighth, and Fourteenth Amendments to the Constitution and or were utterly indifferent to the violation of his constitutional rights.  Defendants, in committing such acts are liable to Plaintiff under 42 U.S.C. §1983, §1985.

68.    Defendants PARKER and COUNTY, knowing that the JAIL was severely overcrowded and knowing that pretrial detainees were being placed in confinement cells with convicted felons known to be dangerous posed a clear and present danger to the safety of such detainees as the Plaintiff, and Defendants having the power to correct these conditions, willfully, deliberately, maliciously and with gross negligence and reckless disregard failed to do so, rendering Defendants liable to Plaintiff under and pursuant to 42 U.S.C. §1983, §1985.  The failure on the part of all Defendants to take any action to prevent such conduct constituted a practice, policy and custom which deprived the Plaintiff of his constitutional rights.

69.     The deplorable conditions which existed at JAIL at all times relevant to this action, which were due to the acts and omissions of the Defendants, violated the Plaintiff's constitutional right of due process and equal protection of the laws guaranteed by the Fifth and Fourteenth Amendments, rendering Defendants liable to Plaintiff under and pursuant to 42 U.S.C.. §1983, §1985.

70.     Defendants, being so situated that any one of them could have acted to prevent the injury suffered by the Plaintiff as set forth above, did individually and jointly, deliberately maliciously, and willfully fail to do so, rendering Defendants liable to Plaintiff under 42 U.S.C.. §1983, §1985.

71.     By reason of the above unlawful, malicious, and deliberate acts, actions, conspiracies and course of conduct of, by and among Defendants, Plaintiff has been damaged in an amount in excess of seventeen million dollars including actual physical injuries, death, unlawful deprivation of liberty, violation of his civil rights, pain and suffering, medical expenses, loss of earnings, the loss of enjoyment of life.

WHEREFORE, the Plaintiff claims the following damages jointly and severally against each Defendant:

        a.  Compensatory damages in an amount in excess of $10,000,000.00

        b.  Punitive damages in an amount in excess of $7,000,000.00

        c.  Such other and further relief as the Court may deem appropriate including costs and reasonable attorneys' fees.

## COUNT II
## FAILURE TO PROVIDE ADEQUATE STAFF AND TO ADEQUATELY TRAIN STAFF
## (against PARKER and CORRECTIONS OFFICIALS)

72.     Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

73.     Plaintiff brings this action under 42 U.S.C. §1983, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1985.

74.     In this Count, Plaintiff sues Defendant, PARKER, in his official capacity as Sheriff of Brevard County, and CORRECTIONS OFFICIALS in their official capacities as law enforcement officers employed by the Brevard County Sheriff's Office.

75.     LORENZA had allegedly been placed in an isolation cell for exhibiting harassing tendencies toward other inmates. DONTE had recently been charged while in jail for violence and attempted kidnapping of another inmate. DONTE had been placed in an isolation cell for exhibiting violent tendencies toward other inmates and for threatening guards.

76.     At all times material hereto, PARKER was aware of the absence of a classification system, of the excessive population at the jail, of the placement of persons such as EVANS and McCREARY in "administrative confinement" together, of the increased risk(s) of violence and of the constitutional violations taking place at the jail affecting McCREARY. PARKER was deliberately indifferent to, and ignored and disregarded the serious risk of harm that was likely to befall LORENZA and which ultimately led to LORENZA's sexual assault, battery, strangulation and death. Furthermore, PARKER failed to remedy the understaffing problem and shortage that has been an ongoing problem at the Brevard County Detention Center. Specifically, in 2003 PARKER was informed that sixty-five (65) additional staffers were needed at the JAIL to deal with the massive overcrowding. In response, PARKER added zero staff. Furthermore, the Average Daily Inmate Population increased 90% since the JAIL opened while staffing has increased just 6%. The persistent understaffing was known to PARKER, as was the increased risk of harm arising from inmate on inmate violence as a result of the understaffed and overcrowded conditions. PARKER also knew that placing an inmate

like DONTE in an isolation cell with an inmate like LORENZA was likely if not certain to result in injury to LORENZA.

77.     It was PARKER's indifference to the conditions at the BREVARD jail and his indifference to the training and staffing at his jail and the absence of an adequate classification system that caused LORENZA's death.

78.     Indeed, PARKER's persistent allowing of violent prisoners to be housed in smaller, more isolated cells together, without extra safety precautions amounted to a policy and custom of constitutional rights violations.

79.     CORRECTION OFFICIALS were all agents/employees of PARKER and were responsible at the applicable date and time for monitoring the safety and security of inmates in the 300 Pod or were otherwise involved in the management of and responsibility for LORENZA and or DONTE or both.

80.     Furthermore, some or all of CORRECTION OFFICIALS were responsible for making the decision to house the two together or were involved in the decision to house them together or were in a position to recommend an alterantive course or to take an alternative course knowing what they knew or should have known.

81.     Furthermore, CORRECTION OFFICIALS failed to take steps to prevent DONTE from being housed with another inmate and specifically LORENZA who should not have been housed with DONTE.

82.     PARKER has failed in his official capacity along with his agents, deputies and correction officers, to train administration, correctional officers and deputies to properly classify inmates to monitor inmates who pose a risk to other inmates, to properly restrict personal items placed in isolation cells when violent inmates are with other violent inmates, and other stuff.

83.   It is PARKER's custom, policy and practice to improperly train or fail to train his agents and employees at the jail with regard to how to deal with the above.

84.   PARKER likewise failed to provide an adequate amount of staff which he knew increased the likelihood of harm arising out of inmate on inmate violence. PARKER has a past practice of ignoring inmate claims that at times inmates are housed together knowing of a risk of physical harm specifically as punishment.

85.   As a direct and proximate and foreseeable result of the violations of substantive rights under the Fourteenth Amendments and the misconduct of Defendant, PARKER, as set forth above, LORENZA suffered a violation of his constitutional rights and was beaten, punctured in the face with a pencil, punctured through the eyes with a pencil, sexually assaulted, strangled, and ultimately murdered.

86.   The employees, agents and/or servants of PARKER, through their actions or inactions described above, deprived LORENZA of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution thus causing LORENZA's death.

87.   As a result of the death of LORENZA, Plaintiff is entitled to recover all damages allowed by Florida law and for violation of 42 U.S.C. §1983 including reasonable compensation for attorneys' fees pursuant to 42 U.S.C. §1988.

88.   Plaintiff maintains that damages are due from PARKER and his agents and or employees because their conduct was deliberately indifferent, willful and intentional toward the public in general and LORENZA in particular, causing his severe injury and death.

WHEREFORE, Plaintiff demands judgment for damages against PARKER, CORPORAL DAILS NED MILS, SERGEANT ANSELL, SERGEANT DAVIS, LIEUTENANT DODSON, MAJOR HIBBS, MAJOR LISA PATRICK who were all employees and/or agents of PARKER, whose constitutional violations, civil rights violations

and misconduct caused by the Plaintiff's decedent's injuries and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof.

**COUNTIII**
**CREATING ULTRA HAZARDOUS CONDITIONS (§1983)**
**AND FAILING TO PROTECT CAUSING LORENZA'S DEATH**
**(against PARKER and CORRECTIONS OFFICIALS)**

89.     Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

90.     Plaintiff brings this action under 42 U.S.C. §1983, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1985.

91.     In this Count, Plaintiff sues Defendant, PARKER, in his official capacity as Sheriff of Brevard County, and CORRECTIONS OFFICIALS in their official capacitiesas law enforcement officers employed by the Brevard County Sheriff's Office.

92.     At all times material hereto, the CORRECTIONS OFFICIALS and PARKER were acting under color of state law and pursuant to policy, custom and/or usage.  After PARKER and CORRECTIONS OFFICIALS were on actual notice that DONTE posed an immediate risk of severe physical harm to other inmates and that there was a strong likelihood he would injure another inmate severely, they handed DONTE a pencil and sent him into a small isolation cell along with LORENZA, a troubled man half his weight.

93.     These Defendants' acts constituted deliberate indifference to the serious risk of harm to LORENZA and may have been intentional as a means of punishing him.

94.     These Defendants' acts constituted cruel and unusual punishment in violation of of the rights, privileges and immunities guaranteed by the Fourteenth Amendment tothe United States Constitution.  Had the named Defendants remedied this situation, LORENZA would not be deceased.

95.     These Defendants have continually and persistently ignored the risks of placing inmates with known violent tendencies toward other inmates with other inmates in "isolation" cells.

96.     Despite PARKER's knowledge, he was deliberately indifferent to, ignored and disregarded the hazardous conditions deliberately created in his JAIL.  Specifically, PARKER has a custom or practice of failing to provide proper and safe housing to inmates placed in isolation by placing inmates in extremely tight quarters together with no regard to their violent propensities toward each other.

97.     The dangerous condition in this case was deliberately created by PARKER and resulted in the death of LORENZA which was substantially likely if not certain to occur as a result of PARKER's policy, custom or practice.

98.     The failure of PARKER to address the ultra hazardous conditions he created led to and caused the death of LORENZA.  PARKER was deliberately indifferent to the needs of LORENZAand the ultra hazardous conditions in which he was placed.    As a direct and foreseeable result of the substantive rights violation of the Fourteenth Amendment and the misconduct of PARKER, as set herein above, LORENZAsuffered injuries which caused his death.  PARKER willfully exposed LORENZA to the conditions that caused his death either through utter indifference or deliberately as punishment.

99.     Beyond that, PARKER exposed LORENZA to ultra-hazardous and inhumane jail conditions known to cause physical harm to inmates and then failing to protect LORENZA from these conditions and as a direct and proximate result causing the death of LORENZA.

100.    Furthermore, at the time of LORENZA's death, the Brevard County Detention Center was severely overcrowded resulting in an ultra-hazardous condition present therein and which was an ongoing and pervasive problem such as to constitute a policy and practice of

violating substantive rights provided for in the Fourteenth Amendment to the United States Constitution, thus causing LORENZA's death.

101. The CORRECTIONS OFFICIALS, for themselves and as employees, agents and servants of PARKER through their actions described above, deprived LORENZA of his rights privileges, and immunities secured by the Fourteenth Amendment to the Constitution, thereby causing LORENZA's death.

102. Furthermore, PARKER and CORRECTIONS OFFICIALS knowingly created an ultra-hazardous condition within the Brevard County Detention Center, that they recklessly and or wantonly failed to remedy despite knowledge that there was a strong likelihood that inmates would suffer harm due to the condition, thereby acting recklessly indifferent to the needs of the inmates resulting in a deprivation of the Constitutional rights along with the death of the LORENZA.

103. As a result of LORENZA's death, Plaintiff is entitled to recovery of all damages allowed under Florida law and for violation of 42 U.S. C. §1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. §1988.

104. The Plaintiff is also seeking damages against PARKER because his conduct constituted deliberate indifference, willful conduct and intentional conduct toward the public in general and specifically LORENZA and this conduct caused injuries which caused his death.

WHEREFORE, Plaintiff demands judgment for damages against PARKER and CORRECTIONS OFFICIALS, whose constitutional violations, civil rights violations and misconduct caused LORENZA's injuries and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof.

## COUNT IV
## VIOLATION OF §1983, U.S.C. (POLICY, CUSTOM OR USAGE)
### (against COUNTY)

105.   Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

106.   LORENZA brings this action under 42 U.S.C. §1983, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1985.

107.   At all times material hereto, COUNTY was aware of the overcrowded conditions at the jail and affirmatively elected to maintain the status quo rather than implementing required change. COUNTY understood and was utterly indifferent to the risks of maintaining an overcrowded jail notwithstanding the danger to inmates. At all times, COUNTY, was acting under color of state law and pursuant to policy, custom and/or usage of COUNTY.

108.   At all times material hereto, COUNTY owned and maintained the JAIL.

109.   Additionally, COUNTY was specifically aware that the overcrowded conditions of JAIL posed a severe risk of physical harm to inmates and just days before had been characterized by Judge Edelstein (who the COUNTY had hired) as a "ticking time bomb".

110.   COUNTY took no action to address the specific risks referenced in Judge Edelstein's report, which risks specifically contributed to the death of LORENZA. COUNTY further was deliberately indifferent to and ignored the serious risk of harm to LORENZAand may have been indifferent to a policy of intentionally housing dangerous inmates together as punishment.

111.   COUNTY had a duty to provide LORENZA with a JAIL that was not so grossly overcrowded that inmates could not be properly supervised, violent inmates were housed in isolation cells with other inmates, correctional officers were not properly trained, and other ultrahazardous conditions existed conductive to the conditions that caused LORENZA's death.

112.   COUNTY and or its agents and or employees created an ultra-hazardous condition at the JAIL knowingly and with indifference, ignored the condition with indifference and failed to protect the inmates in the JAIL from these ultra-hazardous conditions, including but not limited to LORENZA, resulting in his death.

113.   COUNTY willfully exposed LORENZA to ultra-hazardous and inhumane jail conditions and then failed to protect him from those conditions directly and proximately causing his grievous injury and then death.

114.   COUNTY knew or should have known that the JAIL was severely overcrowded, that the JAIL was understaffed, and that as a result, there was a greater risk of harm to inmates and particularly LORENZA and as a direct result of that, LORENZAdied.

115.   Furthermore, at the time of LORENZA's death, the Brevard County Detention Center was severely overcrowded resulting in an ultra-hazardous condition present therein and which was an ongoing and pervasive problem such as to constitute a policy and practice of violating substantive rights provided for in the Fourteenth Amendment to the Constitution, thus causing LORENZA's death.

116.   Furthermore, COUNTY and its employees and/or agents knowingly created an ultra-hazardous condition within the Brevard County Detention Center by expressly and deliberately violating a Federal Court Order resulting in a deprivation of the Constitutional rights, along with the death of, LORENZA.

117.   COUNTY further permitted and created a policy, custom or usage whereby it failed to train or require the training of its employees including CORRECTIONS OFFICIALS, at JAILin how to receive and classify inmates and more particularly how to classify inmates being placed in smaller isolation cells together. It failed to establish guidelines, procedures and training programs for its CORRECTIONS OFFICIALS to instruct them how to deal with

inmates at JAIL who posed a severe risk of harm to other inmates thereby causing the death of LORENZA.

118.   COUNTY knew that the JAIL was so grossly overcrowded that it was a "ticking time bomb" that had a higher risk of inmate on inmate violence and specifically posed a greater risk of physical harm to LORENZA which ultimately caused his death.

119.   COUNTY established a policy, custom or usage at JAIL that resulted in inadequate staffing levels resulting in inadequate supervision of inmates resulting in the death of LORENZA.

121.   At all times material hereto, COUNTY acted with deliberate indifference and willfully and intentionally in its failure to provide adequate medical treatment.

122.   COUNTY deprived LORENZA of his rights, privileges and immunities secured by the Fourteenth Amendment to the Constitution thereby causing his death.

123.   As a direct, proximate and foreseeable result of the Fourteenth Amendment's substantive rights violations and misconduct of the employees, agents and servants of Defendant COUNTY, LORENZA died.

124.   As a result of LORENZA's death, Plaintiff is entitled to recovery of all damages allowed under Florida law and for violation of 42 U.S. C. §1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. §1988.

125.   The Plaintiff is also seeking damages against COUNTY because its conduct constituted deliberate indifference, willful conduct and intentional conduct toward the public in general and specifically, LORENZA, and this conduct caused injuries which caused his death.

WHEREFORE, Plaintiff demands judgment for damages against COUNTY, whose constitutional violations, civil rights violations and misconduct caused LORENZA's injuries

and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof.

### COUNT V
### VIOLATION OF §1983, U.S.C. (POLICY, CUSTOM OR USAGE)
### (against PARKER)

126.    Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

127.    Plaintiff brings this action under 42 U.S.C. §1983, the Fourteenth Amendment to the Constitution, and 42 U.S.C. §1985.

128.    At all times material hereto, the employees, agents and/or correction officers of Defendant PARKER were acting as agents of Defendant PARKER whose knowledge of the risks is imputed to PARKER, all of whom were acting under color of state law and pursuant to policy, custom and/or usage of PARKER.

129.    In the days prior to LORENZA's death, PARKER's agents and employees were aware that DONTE had a propensity for extreme violence against inmates.   This actual knowledge is imputed to PARKER.

130.    Additionally, PARKER was specifically aware that the overcrowded conditions of JAIL posed a severe risk of physical harm to inmates and just days before had been characterized by Judge Edelstein as a "ticking time bomb".

131.    PARKER took no action to address the specific risks referenced in Judge Edelstein's report which specifically contributed to the death of LORENZA. PARKER further was deliberately indifferent to and ignored the serious risk of harm to LORENZAand may have been indifferent to a policy of intentionally housing dangerous inmates together as punishment.

132.    PARKER had a duty to provide LORENZA with a jail that was not so grossly overcrowded that inmates could not be properly supervised, violent inmates were housed in

isolation cells with other inmates, correctional officers were not properly trained, and other ultra-hazardous conditions existed conductive to the conditions that caused LORENZA's death.

133. PARKER and or its agents and or employees created an ultra-hazardous condition at the JAIL knowingly and with indifference, ignored the condition with indifference and failed to protect the inmates in the JAIL from that ultra-hazardous condition, including but not limited to LORENZA, resulting in his death.

134. PARKER willfully exposed LORENZA to ultra-hazardous and inhumane jail conditions and then failed to protect him from those conditions, directly and proximately causing his grievous injury and then death.

135. PARKER knew or should have known that the JAIL was severely overcrowded, that the JAIL was understaffed, and that as a result, there was a greater risk of harm to inmates and particularly LORENZA and as a direct result of that, LORENZAdied.

136. Furthermore, at the time of LORENZA's death, the Brevard County Detention Center was severely overcrowded resulting in an ultra-hazardous condition present therein and which was an ongoing and pervasive problem such as to constitute a policy and practice of violating substantive rights provided for in the Fourteenth Amendment of the United States Constitution, thus causing LORENZA's death.

137. Furthermore, PARKER and his employees and/or agents knowingly created an ultra hazardous condition within the Brevard County Detention Center by expressly and deliberately violating the consent decree resulting in a deprivation of the Constitutional rights along with the death of the LORENZA.

138. PARKER further permitted and created a policy, custom or usage whereby it failed to train or require the training of its employees including correction officers, at the

JAILin how to receive and classify inmates and more particularly how to classify inmates being placed in smaller isolation cells together.

139.    PARKER failed to establish guidelines, procedures and training programs for his correction officers to instruct them how to deal with inmates at the JAIL who posed a severe risk of harm to other inmates, thereby causing the death of LORENZA.

140.    PARKER knew that the JAILwas so grossly overcrowded that it was a "ticking time bomb" that had a higher risk of inmate on inmate violence and specifically posed a greater risk of physical harm to LORENZA which ultimately caused his death.

141.    PARKER established a policy, custom or usage at the JAIL that resulted in inadequate staffing levels resulting in inadequate supervision of inmates resulting in the death of LORENZA.

142.    At all times material hereto, PARKER acted with deliberate indifference and willfully and intentionally in its failure to provide adequate medical treatment.

143.    PARKER deprived LORENZA of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States thereby causing his death.

144.    As a direct, proximate and foreseeable result of the Fourteenth Amendment substantive rights violations and misconduct of the employees, agents and servants of the Defendant, PARKER, LORENZA died.

145.    As a result of LORENZA's death, Plaintiffs are entitled to make recovery of all damages allowed under Florida law and for violation of 42 U.S. C. §1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. §1988.

146.    The Plaintiffs are also seeking damages against PARKER because his conduct constituted deliberate indifference, willful conduct and intentional conduct toward the public in general and specifically, LORENZA and this conduct caused injuries which caused his death.

WHEREFORE, Plaintiff demands judgment for damages against PARKER, whose constitutional violations, civil rights violations and misconduct caused the LORENZA's injuries and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof.

## COUNT VI
### VIOLATION OF §1983, U.S.C. (FAILING TO MONITOR AND PROVIDE SAFE HOUSING FOR INMATES)
### (against CORRECTION OFFICIALS)

147.    Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

148.    Plaintiff brings this action under 42 U.S.C. §1983, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1985.

149.    Plaintiff sues CORRECTIONS OFFICIALS in their official capacities as law enforcement officers employed by the Brevard County Sheriff's Office.

150.    On or about August 6, 2008, CORRECTIONS OFFICIALS in their official capacity failed to properly house, watch, monitor, detect, and otherwise prevent the death of LORENZA.

151.    Defendants CORRECTIONS OFFICIALS and the Brevard County Sheriff's Office had a policy of or practice of failing to recognize, house, prevent, and provide for inmates at the Brevard County Detention Center who were being housed with other inmates who were knowingly dangerous to other inmates.

152.    All of these Defendants knew or should have known that LORENZA was at an extreme and unacceptable risk of harm as a result of being housed in an isolation cell with

DONTE and/or LORENZA was intentionally housed with DONTE **because** DONTE posed a severe physical risk to LORENZA as a means to punish LORENZA.

153.    As a direct and proximate and foreseeable result of the violations of the Fourteenth Amendment and the misconduct of Defendants CORRECTIONS OFFICIALS, LORENZAsuffered injuries which caused his death.

154.    Specifically it was well known by PARKER and CORRECTIONS OFFICIALS that the JAIL conditions were severely overcrowded and that the conditions in the JAILwere a "ticking time bomb".

155.    These Defendants further knew or should have known that housing LORENZA with DONTE posed a severe and unacceptable likelihood of severe physical harm to LORENZA.

156.    Defendants are liable for the policy or practice of violating inmates' rights as described herein.

157.    At all times material hereto, the employees, agents, and/or CORRECTIONS OFFICIALSof the Defendant, PARKER and the Defendant PARKER were acting under color of state law and pursuant to policy, custom and/or usage.

158.    After PARKER and CORRECTIONS OFFICIALS were on actual notice that DONTE posed an immediate risk of severe physical harm to other inmates and that there was a strong likelihood he would injure another inmate severely, they handed DONTE a pencil a sent into a small isolation cell along with LORENZA, a troubled man half his weight.

159.    The direct knowledge of PARKER's agents and or employees is imputed to PARKER who knew or should have known of the risk.

160.    These Defendants' acts constituted deliberate indifference to the serious risk of harm to LORENZAand may have been intentional as a means of punishing him.

161.    These Defendants' acts constituted cruel and unusual punishment in violation of of the rights, privileges and immunities guaranteed by the Fourteenth Amendment to the United States Constitution.  Had the named Defendants remedied this situation, LORENZA would not be deceased.

162.    All named Defendants have continually and persistently ignored the risks of placing inmates with known violent tendencies toward other inmates with other inmates in "isolation" cells.

163.    These Defendants were deliberately indifferent to, ignored and disregard the hazardous conditions deliberately created in his Jail.  Specifically, PARKER has a custom or practice of failing to provide proper and safe housing to inmates placed in isolation by placing inmates in extremely tight quarters together with no regard to their violent propensities toward each other.

164.    The dangerous condition in this case was deliberately created by these Defendants and resulted in the death of LORENZA which was substantially likely if not certain to occur as a result of PARKER's policy, custom or practice.

165.    The failure of these Defendants to address the ultra-hazardous conditions they created led to and caused the death of LORENZA.

166.    PARKER and CORRECTIONS OFFICIALS were deliberately indifferent to the needs of LORENZA and the ultra-hazardous conditions in which he was placed.

167.    As a direct and foreseeable result of the substantive rights violation of the Fourteenth Amendment and the misconduct of PARKER as set herein above, LORENZA suffered injuries which caused his death.

168.    PARKER willfully exposed LORENZA to the conditions that caused his death either through utter indifference or deliberately as punishment.

169.    As a result of LORENZA's death, Plaintiff is entitled to make recovery of all damages allowed under Florida law and for violation of 42 U. S. C. §1983 including reasonable compensation for attorney's fees pursuant to 42 U.S.C. §1988.

170.    The Plaintiff also seeks damages against PARKER because his conduct constituted deliberate indifference, willful conduct and intentional conduct toward the public in general and specifically LORENZA and this conduct caused injuries which caused his death.

WHEREFORE, Plaintiff demands judgment for damages against PARKER and CORRECTIONS OFFICIALS, whose constitutional violations, civil rights violations and misconduct caused LORENZA's injuries and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof.

**COUNT VII**
**WRONGFUL DEATH PURSUANT TO §768.16-§768.27, FLORIDA STATUTES**
**(against COUNTY)**

171.    Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

172.    At all times material hereto, COUNTY owed a duty to Plaintiff, who was under their custody and control and was a pretrial detainee.

173.    COUNTY failed to discharge its duty to Plaintiff in at least the following ways:

a.    By failing to properly supervise the JAIL

b.    By failing to properly supervise PARKER

c.    By failing to properly fund the JAIL

d.    By failing to obey Federal Court Orders pertaining to overcrowding conditions;

e.    By failing to properly require the classification of inmates

f.    By failing to properly require adequate staffing at the JAIL

g.      By permitting inmates to be housed together in isolation cells

h.      By failing to take steps to address what they knew to be were institutionally created ultra-hazardous conditions at the JAIL;

i.      By failing to warn LORENZA about EVANS's propensity toward violence against other inmates;

j.      By failing to address the recommendations of Judge Edelstein; and

k.      By failing to direct PARKER to address the recommendations of Judge Edelstein.

174.    As a direct and proximate result of COUNTY's failure to discharge its duty, LORENZA died.

175.    COUNTY is likewise vicariously liable for the negligent acts of its employees, agents and servants including the correction officers employed at the JAIL.

176.    As a result of the Plaintiff's decedent's death, Plaintiff is entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages:

a.      Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b.      Each survivor may recover the value of loss of support and service from the date of decedent's injury to his death with interest and future loss of support and service from the date of death and reduced to Present Value.

c.      Each survivor may recover for their mental pain and suffering from the date of injury.

d.      Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has pad them.

e.      The decedent's personal representative may recover for the decdent's estate the following:

1.      The loss of prospective net accumulations beyond death reduced to present value.

2.      Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, Plaintiff demands judgment for damages against COUNTY, whose constitutional violations, civil rights violations and misconduct caused LORENZA's injuries and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof

## COUNT VIII
## WRONGFUL DEATH PURSUANT TO §768.16-§768.27, FLORIDA STATUTES
### (against PARKER)

177.    Plaintiff incorporates by reference paragraph one through sixty-three above as if fully restated herein.

178.    In this Count, Plaintiff sues Defendant, PARKER, in his official capacity as Sheriff of Brevard County.

179.    At all times material hereto, PARKER owed a duty to Plaintiff, who was under his custody and control and was a pretrial detainee.

180.    PARKER failed to discharge his duty to Plaintiff in at least the following ways:

a.      By failing to properly supervise the JAIL

b.      By failing to properly supervise CORRECTIONS OFFICIALS

c.      By failing to properly fund the operations at the JAIL

d.      By failing to obey Federal Court Orders pertaining to overcrowding conditions;

e. By failing to properly require the classification of inmates

f. By failing to properly require adequate staffing at the JAIL

g. By permitting inmates to be housed together in isolation cells

h. By failing to take steps to address what he knew to be were institutionally created ultra-hazardous conditions at the JAIL;

i. By failing to warn LORENZA about EVANS's propensity toward violence against other inmates;

j. By failing to address the recommendations of Judge Edelstein; and

k. By failing to direct PARKER to address the recommendations of Judge Edelstein.

181. As a direct and proximate result of PARKER's failure to discharge its duty, LORENZA died.

182. PARKER is likewise vicariously liable for the negligent acts of his employees, agents and servants including the correction officers employed at the JAIL.

183. As a result of the Plaintiff's decedent's death, Plaintiff is entitled to recover all damages allowed under the Florida Wrongful Death Statute including the following damages:

a. Each statutory survivor shall recover the future loss of support and services from the date of death reduced to present value;

b. Each survivor may recover the value of loss of support and service from the date of decedent's injury to his death with interest and future loss of support and service from the date of death and reduced to Present Value.

c. Each survivor may recover for their mental pain and suffering from the date of injury.

     d.    Medical or funeral expenses due to the decedent's injury or death may be recovered by the survivor who has pad them.

     e.    The decedent's personal representative may recover for the decdent's estate the following:

     1.    The loss of prospective net accumulations beyond death reduced to present value.

     2.    Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent.

WHEREFORE, Plaintiff demands judgment for damages against PARKER, whose constitutional violations, civil rights violations and misconduct caused LORENZA's injuries and death and for all compensatory damages allowed by law, and other damages allowed by law along with attorneys' fees and costs hereof

Plaintiff demands trial by jury on all issues.

Jacobs / Offir, P.L.
1911 Harrison Street
Hollywood, FL 33020
Telephone (954) 929-0679
Facsimile (954) 929-0926
eric@jacobsoffir.com

By: _____
    Eric A. Jacobs, Esq.
    FL Bar No.: 0189065

IN THE CIRCUIT COURT FOR          BREVARD        COUNTY,

FLORIDA                                     PROBATE DIVISION

IN RE: ESTATE OF
LORENZA MCCREARY          File No.      05-200 _8 CP 16591_ XXXX - XX

                                          Division          _____

    Deceased.

LETTERS OF ADMINISTRATION
(single personal representative)

TO ALL WHOM IT MAY CONCERN

    WHEREAS  Lorenza McCreary, a resident of 869 Camp Road, Cocoa, Florida 32926, died on

October 7, 2008, owning assets in the State of Florida, and

    WHEREAS, Carolyn McCreary has been appointed personal representative of the estate of the

decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

    NOW, THEREFORE, I, the undersigned circuit judge, declare Carolyn McCreary duly qualified

under the laws of the State of Florida to act as personal representative of the estate of Lorenza McCreary,

deceased,  with full power to administer the estate according to law; to ask, demand, sue for, recover and

receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will

permit and the law directs; and to make distribution of the estate according to law.

ORIGINAL SIGNED ON

ORDERED on _____ , _____ · JAN 16 2009

_____
BY J. PRESTON SILVERNAIL
CIRCUIT JUDGE
Circuit Judge

Bar Form No. P-3.0700
© Florida Lawyers Support Services, Inc.
January 1, 2006