# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CAROLYN McCREARY as Personal
Representative of the Estate of Lorenza
McCreary,

                Plaintiff,

-vs-                                      Case No.  6:09-cv-1394-Orl-19DAB

BREVARD COUNTY, FLORIDA, a political
subdivision of the State of Florida, BREVARD
COUNTY SHERIFF JACK PARKER
individually and in his official capacity,
CORPORAL DAILA NED-MILLS,
LIEUTENANT DODSON, CORPORAL GETZ,
GEORGE REED, MAJOR LISA PATRICK,
OFFICER JAMES MOFFITT, OFFICER
LARRY CUMMINGS, and JOHN/JANE DOES
1-50,

                Defendants.

_____

## ORDER

This case comes before the Court on the following:

1.     Motion to Strike Second Amended Complaint by Defendant Brevard County (Doc.
No. 57 at 16-17, filed Apr. 14, 2010);

2.     Motion to Dismiss Second Amended Complaint by Defendants Jack Parker, Daila
Ned-Mills, George Reed, Lisa Patrick, James Moffitt, and Larry Cummings (Doc.
No. 59, filed Apr. 23, 2010); and

3.     Response to Defendants' Motion to Dismiss Second Amended Complaint by Plaintiff
Carolyn McCreary (Doc. No. 67, filed June 1, 2010).

## Background

### I. Factual Allegations[1]

This case stems from the incarceration of Lorenza McCreary ("McCreary") and is brought on behalf of McCreary by his mother, Carolyn McCreary ("Plaintiff"), as personal representative of McCreary's estate. (Doc. No. 55 ¶ 9.) On August 29, 2008, McCreary was arrested and booked into the Brevard County Jail ("Jail"). (Doc. No. 55 ¶ 49.) On September 4, 2008, McCreary was accused of poking another inmate with his fingernails and was transferred to the administrative containment wing. (*Id.* ¶ 54.) On September 25, 2008, Donte Evans ("Evans") was assigned as McCreary's cellmate. (*Id.* ¶¶ 69-70.)

On October 6, 2008, guards allegedly discovered McCreary on the floor of his cell. (*Id.* ¶ 80.) Plaintiff maintains that McCreary had been beaten, strangled, and punctured with a sharpened pencil by Evans. (*Id.* ¶¶ 83-84.) Plaintiff asserts that McCreary died the following day from his injuries. (*Id.* ¶ 85-86.)

### II. Procedural History

On August 7, 2009, Plaintiff filed an eight count Complaint against Brevard County, Florida ("Brevard County"), Brevard County Sheriff Jack Parker, Officer James Moffitt, Officer Larry Cummings, Corporal Daila Ned-Mills, Sergeant Ansell, Officer Mark Morris, Sergeant Davis, Lieutenant Dobson, Major Hibbs, Corporal Getz, Corporal Kellerup, George Reed, Major Lisa Patrick, and John/Jane Does 1-50. (Doc. No. 1.) On January 20, 2010, the Court granted in part a Motion to Dismiss and gave Plaintiff leave to file an Amended Complaint. (Doc. No. 46.) On

---

[1] The facts presented in this Order are derived from the allegations of the Second Amended Complaint. These facts are included only to provide context and should not be construed as findings of fact.

March 29, 2010, Plaintiff filed an Amended Complaint. (Doc. No. 54.) On March 31, 2010, Plaintiff filed a Second Amended Complaint against Brevard County, Parker, Ned-Mills, Dodson, Getz, Reed, Patrick, Moffitt, Cummings, and Does 1-50. (Doc. No. 55.) Defendant Brevard County filed an Answer and Motion to Strike on April 14, 2010. (Doc. No. 57.) On April 23, 2010, Defendants Parker, Ned-Mills, Reed, Patrick, Moffitt, and Cummings filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. (Doc. No. 59.) Plaintiff timely filed a response in opposition to the Motion to Dismiss. (Doc. No. 67.)

**Standard of Review**

**I. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), a court may, on its own motion or by motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). It is not intended to "procure the dismissal of all or part of a complaint." *Rockholt v. United Van Lines*, 697 F. Supp. 383, 386 (D. Idaho 1988) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (1969)). A motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995). Because this standard is rarely met, "[m]otions to strike are generally disfavored by the Court and are often considered time wasters." *Somerset Pharm., Inc. v. Kimball*, 168 F.R.D. 69, 71 (M.D. Fla. 1996).

## II. Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations

of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable

behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

## I. Motion to Strike References to First Names

Defendant Brevard County moves to strike all references to McCreary and Evans by their

first names in the Second Amended Complaint. (Doc. No. 57 at 16-17.) In support of this argument,

Brevard County cites Local Rule 5.03(b)(8), which states that "[w]hen appearing in this Court . . .

all counsel . . . shall . . . [r]efer to all persons . . . by their surnames and not by their first or given

names." This rule states a basic principle of courtroom decorum, not a rule of pleading. *See* Local

Rule 5.03(a) ("The purpose of this rule is to state . . . certain basic principles concerning courtroom

behavior and decorum."). Finding no rule prohibiting the identification of persons by their first

names in pleadings, the Court declines to strike Plaintiff's references to McCreary and Evans by

their first names in the Second Amended Complaint.

## II. Count I: Failure to Protect McCreary

In Count I of the Second Amended Complaint, Plaintiff alleges that the Corrections Officials[2]

violated McCreary's Fourteenth Amendment rights and are liable under 42 U.S.C. § 1983 for failing

---

[2] In the Second Amended Complaint, Plaintiff defines "Corrections Officials" as all named Defendants except for Brevard County and Jack Parker. (Doc. No. 55 ¶¶ 13-14.) All of the Corrections Officials except for Lieutenant Dodson and Corporal Getz have moved to dismiss the Second Amended Complaint. Accordingly, the Court does not determine whether any of the claims against Defendants Dodson or Getz are well-pled. The term "Corrections Officials" as used in this Order refers to all of the named Defendants except for Brevard County, Jack Parker, Lieutenant Dodson, and Corporal Getz.

protect him from being attacked by Evans.  (Doc. No. 55 at 17-20.)  The Corrections Officials argue that this claim should be dismissed because Plaintiff fails to sufficiently allege a violation of McCreary's constitutional rights and because the Corrections Officials are entitled to qualified immunity.  (Doc. No. 59 at 4-16.)

### A.  Violation of McCreary's Constitutional Rights

In order to state a Section 1983 claim for failure to protect McCreary, Plaintiff must allege facts plausibly establishing: (1) a "substantial risk" of serious harm; (2) that the Corrections Officials were subjectively aware of the harm; and (3) that the Corrections Officials were deliberately indifferent to the known risk.  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001); *see also Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) ("The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons.").  Plaintiff must also plead facts from which it may be inferred that the constitutional violation caused his injuries.  *Marsh*, 268 F.3d at 1028.

To sufficiently plead the first two elements, a defendant must be aware of "specific facts from which an inference could be drawn that a substantial risk of serious harm exists."  *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  An inmate's generally problematic nature, including erratic behavior and history of violence, without more, is not enough.  *See id.* (finding no substantial risk of harm based on an inmate's well-documented history of prison disobedience, violent tendencies, and crazed actions, including roaming his cell like a "caged animal").  On the other hand, knowledge of a sufficient risk of serious harm exists where an inmate notifies prison staff of a "particularized threat or fear felt by plaintiff in regards to [another inmate]."  *Id.* at 1350.

Plaintiff asserts that on October 5, 2008, the day before McCreary was attacked, McCreary filed a grievance stating that he was having "problems" and needed to see a mental health professional "A.S.A.P." (*Id.* ¶ 77.) This communication does not plausibly establish that McCreary made any of the Corrections Officials aware of a particularized fear of Evans or threat by Evans. However, the Corrections Officials' knowledge of a substantial risk of serious harm may be shown by "any relevant evidence," not just statements by McCreary. *See Farmer v. Brennan*, 511 U.S. 825, 848 (1994) (noting that the district court erred in granting summary judgment for defendants by giving decisive weight to the inmate's failure to notify defendants of the risk of harm); *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Although relevant, a claimant's "failure to give advance notice [of an attack] is not dispositive." (quoting *Farmer*, 511 U.S. at 848)). In addition, McCreary may have been exposed to a substantial risk of serious harm for reasons personal to him or because he possessed a particular characteristic shared with others. *See Farmer*, 511 U.S. at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.").

Plaintiff alleges that from June 21, 2008 until October 6, 2008, the date of McCreary's death, Evans repeatedly told the Corrections Officials that he would severely injure "jitterbugs," meaning young, black men like McCreary, if housed with them. (Doc. No. 55 ¶¶ 35-40.) The Corrections Officials also allegedly knew that Evans was a violent felon, had a history of inmate-on-inmate violence and mental illness, and was much larger in stature than McCreary. (*Id.* ¶¶ 24-30, 61, 64-68.) Based on the Corrections Officials' alleged knowledge that Evans threatened to seriously injure young black men like McCreary, Plaintiff has plausibly established the first two elements, that the

Corrections Officials knew that Evans posed a "substantial threat of serious harm" to McCreary. Plaintiff has also sufficiently pled the third element, deliberate indifference by the Correctional Officials, by alleging that the Corrections Officials did not assess whether Evans posed a threat to McCreary. (*Id.* ¶ 75.)

Turning to the final element, causation, "the critical question is whether [each defendant] was in a position to take steps that could have averted the . . . incident but, through deliberate indifference, failed to do so." *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 622 (11th Cir. 2007) (citation omitted); *see also Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010) ("[I]n a § 1983 action, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (quoting *Iqbal*, 129 S. Ct. at 1948)). *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982) ("[I]t is clear that the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation."). This inquiry requires consideration of each defendant's "duties, discretion and means." *Rodriguez*, 508 F.3d at 622.

Plaintiff asserts that Defendant Reed placed McCreary in the cell with Evans where the attack occurred, (*id.* ¶¶ 38 n.1, 70, 78), and that Defendants Moffitt and Cummings were charged with patrolling McCreary's cell at the time of the attack.[3] (*Id.* ¶ 81.) Although all of the Corrections Officials allegedly knew that Evans threatened to severely injure any "jitterbugs" housed with him, (*id.* ¶ 38), the Court may infer from the alleged facts that the actions and inactions of Defendants

---

[3] It is unclear from the allegations in the Second Amended Complaint who gave Evans the sharpened pencil used to attack McCreary. (Doc. No. 55 ¶ 72.)

Reed, Moffitt, and Cummings, but not Defendants Ned-Mills or Patrick, plausibly caused the attack. *See Rodriguez*, 508 F.3d at 622 (noting that causation is proved by evidence that the prison official at issue: (1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence; and (3) had other means available to him which he nevertheless disregarded") (internal quotations omitted). Accordingly, Plaintiff's Section 1983 claims for failing to protect McCreary against Defendants Reed, Moffitt, and Cummings are well-pled. The Section 1983 claims for failing to protect McCreary against Defendants Ned-Mills and Patrick will be dismissed for lack of factual allegations plausibly establishing causation.

### B. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, the government official must first show that the contested action was within his or her discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To act within the scope of discretionary authority means that the actions were: (1) undertaken pursuant to the performance of the official's duties; and (2) within the scope of the official's authority. *Collier v. Dickinson*, 477 F.3d 1306, 1308 n.1 (11th Cir. 2007). If this threshold inquiry is satisfied, the Court then determines whether: (1) the facts alleged by the plaintiff make out the violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009). The Court may consider these two factors in either

order. *Id.* at 818.

Although the issue of qualified immunity should be resolved as early as possible in the proceedings, *id.* at 815-16, the Court will not grant qualified immunity at this time because Plaintiff pleads a violation of McCreary's Fourteenth Amendment rights under clearly established law. Clearly established law is limited to precedent of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit, and the Florida Supreme Court. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009). Plaintiff carries the burden of showing: "(1) that a materially similar case has already been decided, giving notice to the [official]; (2) that a broader, clearly established principle should control the novel facts in this situation; or (3) this case fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Keating*, 598 F.3d at 766 (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)).

At the time of the attack, McCreary had a clearly established right to protection from Corrections Officials who possessed actual knowledge that Evans posed a substantial risk of serious harm to McCreary. *See, e.g.*, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (noting that when prison officials are "deliberately indifferent to a known danger, . . . their failure to intervene offend[s] 'evolving standards of decency' [and] ris[es] to the level of a constitutional tort.'") (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Under Plaintiff's version of the facts, Defendants Reed, Moffitt, and Cummings took no action to protect McCreary despite their knowledge of Evans' threats to harm "jitterbugs" and their ability to take protective action. *See supra* part II.A. Plaintiff's allegations are materially similar to the facts in *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611 (11th Cir. 2007), where prison guards were denied summary judgment because the evidence showed that the guards released the plaintiff-inmate into the general population after he

requested protective custody due to threats on his life by gang members. *Id.* at 621-23. The alleged facts are not identical to the facts in *Rodriguez*, as McCreary did not verbally notify Corrections Officials of the threat to his safety and Evans' threat was directed to a group of people, not just McCreary. However, these distinctions are irrelevant under Supreme Court precedent and do not alter the well-settled liability of Defendants Reed, Moffitt, and Cummings for failing to take any action under the circumstances alleged. *See Farmer*, 511 U.S. at 843 ("[I]t does not matter whether . . . a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."); *id.* at 848 (noting that the district court erred granting summary judgment for defendants by giving decisive weight to the inmate's failure to notify defendants of the risk of harm). Accordingly, Defendants Reed, Moffitt, and Cummings should not receive qualified immunity at this stage of the proceedings.

## III. Count I: Supervisory Liability

The parties dispute whether Plaintiff states a claim for supervisory liability under Section 1983 against Defendant Parker, Sheriff of Brevard County, in his individual capacity and whether Parker is entitled to qualified immunity on this claim. (Doc. No. 59 at 19-20; Doc. No. 67 at 3-10.)

### A. Violation of McCreary's Constitutional Rights

Supervisors are liable under Section 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Plaintiff does not allege that Parker personally decided to house McCreary

with Evans or that Parker knew that McCreary and Evans should not have been housed together.[4]

Therefore, Plaintiff must plead facts plausibly establishing a causal connection between Parker's actions and the failure to protect McCreary from Evans. The requisite causal connection exists: (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) when a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff alleges that Parker instituted a policy of housing two inmates per administrative holding cell, (Doc No. 55 ¶ 22), that Parker knew that the Jail was continuously overcrowded, (*id.* ¶ 42), and that Parker knew of the increased risk of inmate-on-inmate violence caused by the Jail's "dangerous overcrowding situation." (*Id.* ¶¶ 23, 43-44). Plaintiff further asserts that inmates complained to Parker that staff deliberately placed them in cells with known violent inmates as punishment. (*Id.* ¶¶ 46, 76.) McCreary was allegedly housed with Evans due to Jail overcrowding, because Evans needed a roommate and for the purpose of punishing McCreary. (*Id.* ¶¶ 69, 76.) Because the same prison safety issues allegedly known to Parker caused McCreary to be housed with Evans, Plaintiff has sufficiently pled a causal connection between Parker's failure to act and the deprivation of McCreary's constitutional rights. Therefore, the supervisory liability claim

---

[4] Plaintiff alleges that Parker knew about Evans' history of mental illness and violence. (Doc. No. 55 ¶ 26.) Plaintiff does not allege, and the Court cannot infer from the alleged facts, that Parker knew of Evans' threat to severely injure "jitterbugs" housed with him or that Evans and McCreary should not have been housed together due to their respective safety classifications. (*Id.* ¶¶ 63-64.)

against Parker in Count I is well-pled.

### B.  Qualified Immunity

Parker is not entitled to qualified immunity at this time because Plaintiff pleads a violation of clearly established law.  In the following four cases, courts found that a sheriff may be held liable for failing to take supervisory action to keep prisoners safe where the conditions of confinement were similar to those alleged here.  In *Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11th Cir. 2001), Plaintiffs sufficiently pled a deliberate indifference claim by alleging that a sheriff failed to act in the face of: (1) widespread possession of weapons by inmates; (2) the failure to confiscate weapons from prisoners; (3) the failure to segregate nonviolent inmates from violent inmates, pretrial detainees from convicted criminals; juveniles from adults, or inmates with mental disorders from those without mental disorders; (4) the lack of discipline for violent behavior and previous assaults on other inmates; (5) intermittent overcrowding; (6) understaffing; (7) inadequate supervision by jailers; and (8) unsupervised prisoner trustees having custodial duties for other prisoners.  *Id.* at 1033 n.12.

In *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995), a deliberate indifference claim against a sheriff survived summary judgment on evidence that: (1) prisoners were not segregated based on their proclivity for violence; (2) there was only one jailer on duty; (3) the jailer's quarters were out of earshot and eyesight of the prisoners' cell; and (4) fights occurred between inmates on a regular basis resulting in injuries requiring medical attention and hospitalization.  *Id.* at 1583-84.

In *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977),[5] the court concluded that the

---

[5] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

following circumstances posed a substantial risk of serious harm due to inmate violence: (1) widespread possession of weapons; (2) no confiscation of weapons; (3) no segregation of violent from nonviolent inmates; (4) previous assaults; (5) overcrowding; (6) too few guards to properly supervise inmates; and (7) multiple reports of stabbing, some resulting in death. *Id.* at 1211.

Finally, in *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974), the court concluded that the following conditions posed a serious risk of harm to inmates: (1) possession of weapons by prisoners; (2) no established procedure for confiscating weapons; (3) lack of classification according to severity of offense, (4) no procedure for reporting previous assaults; (5) overcrowding; (6) lack of supervision by guards; (7) custodial responsibility assigned to incompetent and untrained inmates; and (8) at least twenty-seven reported instances of armed assaults by inmates on other inmates. *Id.* at 1309.

These four cases contain common allegations of overcrowding, inadequate or improper supervision of inmates by prison officials, frequent inmate-on-inmate attacks, failure to segregate violent prisoners from nonviolent prisoners, and failure to confiscate weapons from inmates. Except for the failure to confiscate weapons, each of these factors allegedly created a substantial risk of serious harm to McCreary and contributed to his death. *See supra* part III.A. Because Parker's alleged failure to take any action to protect McCreary under the circumstances violated clearly established law, the Court will not grant Parker qualified immunity at this time.

## IV. Count II: Failure to Hire Adequate Jail Staff and to Train Jail Staff

In Count II of the Second Amended Complaint, Plaintiff asserts that Parker and the Corrections Officials are liable under Section 1983 in their official capacities for failing to hire adequate Jail staff and to adequately train the Jail staff. (Doc. No. 55 at 20-25.) Because Plaintiff

asserts these claims against Parker and the Corrections Officials in their official capacities, this claim is actually pled against Brevard County. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.") (internal quotations omitted).

A county is not liable under Section 1983 merely as a matter of *respondeat superior* for constitutional injuries inflicted by its employees. *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999). A county is, however, liable under Section 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The plaintiff must identify a policy or custom and demonstrate that the policy or custom was "the moving force of the constitutional violation." *Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1211 (11th Cir. 1993) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). In other words, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Plaintiff alleges that Parker employed the Corrections Officials and, by a delegation of authority from Brevard County, was responsible for the operations and management of the Jail. (Doc. No. 55 ¶¶ 11-13.) Therefore, the Corrections Officials are not liable in their official capacities for Jail policies, and the claims against the Corrections Officials in Count II will be dismissed. *See Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (noting that liability under *Monell*

arises from actions of officials with "final policymaking authority"). The Court will separately address Plaintiff's claims alleging a policy of failing to hire adequate staff and failing to adequately train the staff against Parker in his official capacity.

### A. Policy of Failing to Hire Adequate Staff

A policy or custom of failing to hire adequate jail staff may violate prisoners' constitutional rights and result in municipal liability under § 1983. *See Williams*, 547 F.2d at 1212-13 (noting that although "state prison officials enjoy wide discretion in the operation of state penal institutions, . . . [t]he number of prison guards necessary to assure a constitutional level of inmate safety must bear some reasonable relationship to the total number of inmates"). Plaintiff alleges that Parker hired no new staff upon learning in 2003 that sixty-five additional personnel were needed at the Jail to handle overcrowding, (Doc. No. 55 ¶ 112), and that on the date of McCreary's attack, the Jail was not adequately staffed to handle 1,781 inmates. (*Id.* ¶ 79.) Even if these allegations plausibly establish a policy of failing to adequately staff the Jail, Plaintiff alleges no facts from which the Court may infer a direct causal link between the policy of understaffing and Evans' attack on McCreary. Although Parker allegedly knew that the failure to adequately staff the Jail would increase the risk of inmate-on-inmate violence, (*id.* ¶ 122), Plaintiff asserts that McCreary was attacked because Evans threatened to severely injure "jitterbugs" housed with him, because Evans needed a roommate due to Jail overcrowding, and because the Corrections Officials sought to punish McCreary. (*Id.* ¶¶ 38, 69, 76.) Finding no plausible causal connection between the alleged policy to inadequately staff the Jail and Evans' attack of McCreary, Plaintiff's claim against Brevard County for failure to hire adequate Jail staff in Count II should be dismissed. *See Williams v. Willits*, 853 F.2d 586, 589-90 (8th Cir. 1988) (dismissing claim because prisoner did not plead a nexus between the prison

officials' staffing and security policies and the incident in which the prisoner was injured).

**B. Policy of Failing to Adequately Train Staff**

A municipality may liable under § 1983 for a policy or custom of inadequate staff training. *E.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), *Mercado v. City of Orlando*, 407 F.3d at 1161. Plaintiff has sufficiently pled a policy of failing to adequately train the Jail staff by alleging that Parker failed to train corrections officials to properly classify inmates, to monitor inmates who pose a risk to other inmates, and to restrict violent inmates' access to personal items. (*Id.* ¶ 121.) In view of Plaintiff's allegations that the Jail staff housed Evans with McCreary knowing of Evans' prior assaults on cellmates and Evans' threats to severely injure cellmates that were "jitterbugs" like McCreary, (*id.* ¶¶ 38-40, 69-70), and that the Jail staff provided Evans the pencil used to attack McCreary, (*id.* ¶ 72), Parker's alleged failure to train the Jail staff plausibly caused McCreary's injuries. Because Plaintiff has pled facts plausibly establishing that Parker implemented a policy or custom of failing to train staff and that such policy or custom caused McCreary's injuries, Plaintiff's claim for failure to train against Parker in his official capacity is well-pled.

**V. Count III: Creation of an Ultrahazardous Condition**

In Count III of the Second Amended Complaint, Plaintiff asserts a Section 1983 claim against Parker and the Corrections Officials for creating an ultrahazardous condition by providing Evans with a sharpened pencil knowing that there was a strong likelihood that Evans would use the pencil to injure McCreary. (Doc. No. 55 ¶ 131.) Plaintiff maintains that such action constitutes deliberate indifference to McCreary's safety in violation of his Fourteenth Amendment rights. (*Id.* ¶¶ 132-33.) Although providing Evans a sharpened pencil under the alleged circumstances was arguably improper, Plaintiff does not state a claim for deliberate indifference because Plaintiff does

not allege facts from which the Court may infer that Parker or any of the Corrections Officials subjectively disregarded the risk that Evans would attack McCreary with the pencil. *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490-91 (11th Cir. 1996) (clarifying that gross negligence, without subjective awareness and disregard of a substantial risk of serious harm, does not establish deliberate indifference). Therefore, Plaintiff's Section 1983 deliberate indifference claim against Parker and the Corrections Officials in Count III should be dismissed.

## VI. Count V: Maintaining an Overcrowded Jail

A policy or custom of prison overcrowding may subject a municipality to liability under § 1983. *E.g.*, *Williams*, 547 F.2d at 1214-15. In Count V of the Second Amended Complaint, Plaintiff asserts a Section 1983 claim against Defendant Parker in his official capacity for maintaining a policy of Jail overcrowding and taking no action to remedy the overcrowding. (Doc. No. 55 at 31-35.) Plaintiff asserts that this policy resulted in the improper supervision of inmates, the housing of violent inmates with other inmates, and the punishment of inmates by housing them with violent inmates. (*Id.* ¶¶ 166-67.) In light of Plaintiff's allegations that Evans, an inmate who posed a substantial threat of serious harm to McCreary, was housed with McCreary due to Jail overcrowding and for the purpose of punishing McCreary, (*id.* ¶¶ 69, 76), Parker's alleged policy of overcrowding plausibly caused McCreary's injuries. Accordingly, Plaintiff's claim for maintaining policy of overcrowding against Parker in his official capacity is well-pled.

The claims against Parker in Count V for failing to hire adequate Jail staff and failing to train

the Jail staff will be dismissed as duplicative of the Section 1983 claims against Parker in his official capacity in Count II. (Doc. No. 55 at 31-35.) Plaintiff's Section 1983 claim against Parker in Count V for failing to provide McCreary adequate medical treatment will also be dismissed because Plaintiff does not cite, and the Court does not find, any factual allegations in the Second Amended Complaint to support this claim. (*Id.* ¶¶ 156, 177.)

## VII. Count VI: Failure to Monitor and Provide Safe Housing

In Count VI, Plaintiff asserts a Section 1983 claim against the Corrections Officials for failing to monitor and provide safe housing to McCreary. (Doc. No. 55 at 35-38.) Plaintiff does not identify, and the Court does not find, any legal or factual grounds for relief in Count VI other than those asserted in Count I. Accordingly, Count VI should be dismissed as duplicative of Count I.

## VIII. Count VIII: Wrongful Death

In Count VIII, Plaintiff alleges that Parker and the Corrections Officials, in their individual and official capacities, violated the Florida Wrongful Death Act, Sections 768.16-.27, Florida Statutes. (Doc. No. 55 at 40-43.) Parker and the Corrections Officials argue that the wrongful death claims against them for the negligent classification of inmates are barred by the doctrine of sovereign immunity. (Doc. No. 59 at 3, 25.) Parker and the Corrections Officials further maintain that all of the wrongful death claims against them in their individual capacities should be dismissed pursuant to Section 768.28(9)(a), Florida Statutes. (*Id.* at 3.)

### A. Classification of Inmates

Parker and the Corrections Officials argue that under *Davis v. State, Dep't of Corrs.*, 460 So. 2d 452 (Fla. 1st DCA 1984), wrongful death "[c]laims based on a negligent procedure for classification of inmates" are barred by sovereign immunity. (Doc. No. 59 at 3, 25.) In *Davis*, the

First District Court of Appeal of Florida held that the "classification and placement of inmates within the prison system constitutes a discretionary planning level function [and thus] sovereign immunity applies." *Davis*, 460 So. 2d at 453. On the other hand, the failure to classify an inmate pursuant to an established classification policy is an operational function to which sovereign immunity does not attach. *See Dunagan v. Seely*, 533 So. 2d 867, 868 (Fla. 1st DCA 1988) ("[W]hile the making of the policies and procedures for classifying, supervising and maintaining inmates is a discretionary function to which sovereign immunity does attach, the allegation of injury due to the failure to follow those policies is actionable because that failure was an operational function and is not protected by the sovereign immunity doctrine.").

Plaintiff's allegation that Parker and the Corrections Officials are liable for "failing to properly require the classification of inmates," (Doc. No. 55 ¶ 214), concerns the failure to implement, not follow, a policy for the classification of inmates. Thus, pursuant to *Davis* and *Dunagan*, Plaintiff's wrongful death claim against Parker and the Corrections Officials for "failing to properly require the classification of inmates" is barred by sovereign immunity and should be dismissed.[6]

### B. Section 768.28(9)(a), Florida Statutes

Parker and the Corrections Officials assert that the claims against them in their individual capacities should be dismissed pursuant to Section 768.28(9)(a), Florida Statutes, which provides in pertinent part that "[n]o officer, employee, or agent of the state or any of its subdivisions shall be held personally liable in tort . . . unless such officer, employee, or agent acted in bad faith or with

---

[6] Because Parker and the Corrections Officials do not argue that any other wrongful death claims are barred by sovereign immunity, the Court will not address the issue.

malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

Based on the alleged facts discussed *supra* parts II and III, Plaintiff has plausibly established that Defendants Parker, Reed, Moffitt, and Cummings acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights. Because Plaintiff has not alleged any facts concerning Defendants Ned-Mills and Patrick other than their knowledge that Evans threatened to injure any "jitterbug" housed with him, (Doc. No. 55 ¶¶ 38, 40), the Court cannot infer that Ned-Mills or Patrick acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights. Accordingly, the wrongful death claims against Defendants Ned-Mills and Patrick in their individual capacities should be dismissed.

### Conclusion

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1.  The Motion to Strike by Defendant Brevard County, (Doc. No. 57), is **DENIED**.

2.  The Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants Parker, Ned-Mills, Reed, Patrick, Moffitt, and Cummings, (Doc. No. 59), is **GRANTED in part** and **DENIED in part** as follows:

    a.  Count I is **DISMISSED without prejudice** to the extent Plaintiff asserts claims against Defendants Ned-Mills or Patrick.

    b.  Count II is **DISMISSED without prejudice** to the extent Plaintiff asserts claims against Defendants Ned-Mills, Reed, Patrick, Moffitt, or Cummings or a claim against Defendant Parker concerning a policy of inadequate Jail staffing;

     c.        Count III is **DISMISSED without prejudice**;

     d.        Count V is **DISMISSED without prejudice** to the extent Plaintiff asserts claims for failure to hire adequate Jail staff, failure to adequately train the Jail staff, or failure to provide McCreary adequate medical care;

     e.        Count VI is **DISMISSED without prejudice**;

     f.        Count VIII is **DISMISSED without prejudice** to the extent Plaintiff asserts wrongful death claims against Defendants Ned-Mills or Patrick in their individual capacities or wrongful death claims against Parker or the Corrections Officials for failing to properly require the classification of inmates; and

     g.        The Motion to Dismiss is **DENIED** in all other respects.

3.     Plaintiff has leave to file a Third Amended Complaint that comports with this Order within fourteen (14) days from the date of this Order. If the Plaintiff fails to timely submit a Third Amended Complaint, this action will proceed solely on the well-pled claims under the Second Amended Complaint.

**DONE** and **ORDERED** in Orlando, Florida on June 18, 2010.


PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record